IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION



JEFFREY PETER DATTO, PH.D.,

        Plaintiff,

v.

**JURY TRIAL DEMANDED**

ROBERT WILKIE, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,
UNIVERSITY OF MIAMI, AND DAMIEN
PEARSE, PH.D.

        Defendants.
_____/

## COMPLAINT

I, Jeffrey P. Datto, Ph.D., Plaintiff, in the above styled cause, sue Defendants: Robert Wilkie, Secretary, Department of Veterans Affairs, the University of Miami, and Dr. Damien Pearse.

In support of this Complaint, I aver, under the penalty of perjury, as follows:

### Parties

1. Plaintiff, Jeffrey P. Datto, Ph.D. ("Plaintiff" or "Datto"), is a competent adult over 18 who resides in Miami-Dade County, Florida.

2. Defendant, Robert Wilkie, Secretary, Department of Veterans Affairs, ("VA") is the official agency head of the Department Of Veterans Affairs, which has an Office of General Counsel located at 810 Vermont Avenue, NW, Washington, DC 20420.

3. Defendant, University of Miami ("UM"), was Plaintiff's former employer and has more than 15,000 faculty and employees and is located in Miami-Dade County, Florida.

4. Defendant, Damien Pearse, Ph.D. ("Dr. Pearse"), is a Professor in the Department of Neurological Surgery at UM, Plaintiff's former direct supervisor, and he also was/is a principal investigator employed by the VA location in Miami.

## Jurisdiction and Venue

5. This action is filed, in part, under 2 federal laws: Title I and V of the Americans with Disabilities Act, 42 U.S.C. §§ 1201 et seq. ("ADA"), and the Rehabilitation Act of 1973 (Rehab Act), as amended, 29 U.S.C § 791 and the Rehab Act anti-retaliation regulation.

6. Plaintiff is a resident of Miami-Dade County, Florida, was working at UM for over 8 years as Research Associate III and also applied for a VA Career Development Award-2 ("VA-CDA-2") to be able to work as a Research Health Science Officer at the VA facilities located in Miami and in Gainesville, Florida.

7. UM's principal location is in Miami-Dade County.

8. The VA has a location in Miami, Florida and in Gainesville, Florida, which is where the events in controversy occurred.

9. This Court has subject matter jurisdiction due to federal claims under the ADA and Rehab Act.

## COUNT I – Rehab Act – Reprisal
## Datto v. VA, UM, and Dr. Pearse

10. UM is an entity covered under the Rehab Act because it receives federal financial assistance through grants from the National Institutes of Health and the Department of Defense.

11. Dr. Damien Pearse is a recipient of federal financial assistance through grants from the Department of Defense and the Department of Veteran Affairs.

12. Plaintiff was trying to become a recipient of federal financial assistance through the VA-CDA-2 grant.

13. The Rehab Act prohibits retaliation in any program or activity conducted by Federal agencies, including the VA.

14. Plaintiff filed a lawsuit against UM, under the ADA and Rehab Act, (*Datto vs. Univ. of Miami*, et al. Case No. 1:18-cv-21053-GAYLES/LOUIS) in the United States District Court for the Southern District of Florida, Miami Division.

15. Immediately after naming UM in the lawsuit, UM started trying to disqualify Plaintiff's 3 grant applications for a Craig H. Neilsen Foundation award, the VA-CDA-2 award, and a K22 National Institutes of Health ("NIH") award.

16. The NIH K22 award is designed to enhance the participation of highly trained early career investigators from diverse backgrounds underrepresented in neuroscience research, including those who have suffered from a disability as defined by the Americans with Disabilities Act.

17. UM significantly delayed / refused to provide Plaintiff a required letter certifying his disability to apply to the NIH K22 award, which disqualified that grant application.

18. Dr. Pearse also interfered with Plaintiff's attempt of mentorship with Dr. Martin Oudega for the VA CDA-2 award by agreeing to be Plaintiff's mentor instead, then dropping that commitment after the grant application was submitted, thus disqualifying that application.

19. Dr. Pearse then also warned other potential mentors at the Miami VA to not be involved with Plaintiff.

20. Because of this interference with his grant applications, Plaintiff filed a charge against UM and Dr. Pearse with the EEOC and immediately was issued a right to sue letter.

21. UM also refused Plaintiff's reasonable accommodation requests, due to this retaliation, to only have to work from 9 am to 5:30 pm Monday through Friday in order to be physically and emotionally there for his 8 months pregnant wife who was in a lot of pain and to be transferred to a new supervisor after Dr. Pearse harassed and belittled him and put unreasonable work expectations upon him.

22. Within 2 weeks from filing the charge with the EEOC and instantly being issued the first right to sue letter from the EEOC, Plaintiff was terminated from his job.

23. Plaintiff subsequently filed 2 more charges with the EEOC for being also terminated from his job and received 2 additional right to sue letters. (The reason why Plaintiff filed 2 charges is because UM's counsel claimed the first charge was insufficient.)

24. Plaintiff also contacted the Miami VA to see if there is anyone else there who can be his mentor.

25. Additionally, Plaintiff contacted Dr. Kevin Wang and his staff at the Gainesville VA location to see if he would be interested in being his primary mentor.

26. In order for Plaintiff to be considered by Dr. Wang to be his primary mentor, Plaintiff was required to interview in person with Dr. Wang and then also interview with Dr. Stephen Nadeau Associate Chief of Staff for Research at Malcom Randall VA Medical Center in Gainesville, Florida.

27. Plaintiff drove 5 ½ hours to Gainesville, Florida with his wife and 2 daughters for the interviews, which spanned two days.

28. Following the interviews on July 25-26, 2019 in which they were aware Plaintiff was no longer working at UM and was driving for Uber instead, Dr. Kevin Wang agreed to be Plaintiff's primary mentor with his staff as co-mentors, and Dr. Nadeau also supported his application and had his staff process a without compensation (WOC) employment application for Plaintiff, which was a requirement at their VA facility to apply, and Plaintiff was also fingerprinted.

29. After returning home from Gainesville, FL, Plaintiff in his WOC application disclosed on August 15, 2019 for the first time his lawsuit filed against UM and Dr. Pearse because the application asked within the past 5 years have you ever been fired from a job and to explain the situation.

30. During the interviews, Plaintiff was truthful and disclosed everything about what happened at UM, except telling them he sued UM and Dr. Pearse because Plaintiff was never asked that question during the interviews.

31. Additionally, because, under federal law, Plaintiff only had 35 days to initiate a charge against the Miami VA for retaliation, due to their continued refusal to provide him a

mentor; Plaintiff initiated a claim against the Miami VA by contacting an EEO counselor on August 23, 2019, and he filed an official complaint against the Miami VA on September 19, 2019 (case number, 2001-0546-2019105316).

32. However, because Dr. Nadeau and Dr. Wang already committed themselves to supporting Plaintiff's application, they went through with the next stage of the VA-CDA-2 application process of Plaintiff submitting a Letter of Intent ("LOI") through their VA facility in Gainesville.

33. That LOI was submitted through their location by the November 1, 2019 deadline and it was approved for Plaintiff to submit the full grant application by the December 12, 2019 deadline.

34. On November 14, 2019, Plaintiff reached out to Dr. Prodip Bose at the Gainesville VA to see if he would have interest in joining in on the full grant application because Plaintiff wanted him to join in because of Dr. Bose's significant research in the field of spinal cord injury.

35. Dr. Bose immediately responded stating "I will be happy to support you anyway you want" and was very excited about the idea in being part of it in any capacity, including taking over the primary mentorship role from Dr. Wang because he thought he may even be a more appropriate primary mentor.

36. Then shortly after sending those emails to Plaintiff, Dr. Bose met with Dr. Nadeau, who knew about Plaintiff's past claims, and immediately told Plaintiff he was no longer interested in being part of Plaintiff's application because of the alleged reason that he did not have time.

37. Then, thereafter Plaintiff's completed his full grant application was complete, which took significant effort from Plaintiff and Dr. Nadeau's staff adapting his prior application through the Miami VA with Dr. Pearse as the primary mentor to submitting it through the Gainesville VA with Dr. Wang as the primary mentor.

38. However, on the day it was supposed to be submitted, the VA Director Thomas Wisnieski, who found out about Plaintiff's past litigation history, refused to provide a

39. Director's letter in support of the application (which wasn't a requirement at the LOI stage) and the application was disqualified.

39. Dr. Nadeau personally called Plaintiff saying he felt "sick" about this decision and deeply apologized to Plaintiff for it.

40. The Miami VA and Dr. Pearse retaliated against Plaintiff by Dr. Pearse interfering with Plaintiff's ability to establish a mentoring relationship at the Miami VA disqualifying his application there.

41. The VA location in Gainesville retaliated against Plaintiff by Dr. Bose pulling his support of Plaintiff's application after finding out about his past litigation and their Director's last minute refusal to provide a Director's letter in support of Plaintiff's grant application, after finding out about Plaintiff's past litigation, disqualifying his application.

42. Successful applicants to the VA-CDA-2 grant become VA employees.

43. By applying for the VA-CDA-2 grant, Plaintiff was seeking employment with the VA.

44. UM retaliated against Plaintiff by denying his reasonable accommodation requests after Plaintiff named UM as a defendant in a federal lawsuit, under the ADA and Rehab Act, and by terminating him within 2 weeks of filing a new EEOC charge against UM.

45. This violation of the Rehab Act has resulted in a significant delay in Plaintiff's career as a physician scientist and medical educator, loss of the enjoyment of advancing medical science in his career, loss of wages, loss of dignity and reputation, emotional distress, financial losses due to Court costs, interview costs, and loss of time spent representing himself instead of being engaged in paid activities.

## COUNT II – ADA – Title V
### Datto v. VA, UM, and Dr. Pearse

46. Plaintiff brings forth this claim pursuant to Title V of the ADA.

47. Title V of the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

-6-

48. The VA, UM, and Dr. Pearse are persons under the act.

49. Plaintiff incorporates herein by this reference averments 14-44 as if they are fully set forth herein at length.

50. This violation of the ADA has resulted in a significant delay in Plaintiff's career as a physician scientist and medical educator, loss of the enjoyment of advancing medical science in his career, loss of wages, loss of dignity and reputation, emotional distress, financial losses due to Court costs, interview costs, and loss of time spent representing himself instead of being engaged in paid activities.

## COUNT III – Rehab Act – Failure to Accommodate
## Datto v. VA, UM

51. "To state a prima facie failure-to-accommodate [*21] [ ], a plaintiff must show that: (1) she is disabled; (2) she is a qualified individual; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

52. "'[A] plaintiff can be said to have made a request for accommodation when the defendant has enough information to know of both the disability and desire for an accommodation.' *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) (citations and quotations omitted); *see also United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) ('What matters under the ADA are not formalisms about the manner of the request, but whether the [plaintiff] provides the [defendant] with enough information that, under the circumstances, the [defendant] can be fairly said to know of both the disability and desire for an accommodation.')." *Jacobson v. City of W. Palm Beach*, No. 16-cv-81638-DMM, 2017 U.S. Dist. LEXIS 75225 (S.D. Fla. May 11, 2017).

53. As for failing to accommodate this disability, the Plaintiff is a qualified applicant who has a mental illness disability that, when not under control, substantially limits his ability to think, learn, sleep, and interact with other people.

54. He also has been diagnosed with bipolar disorder and with a severe learning, thinking, and sedative disability while on excessive medications to treat bipolar disorder that impacted his performance at the end of medical school at TJU.

-7-

-8-

55. UM and Dr. Pearse, who is also employed by the VA, knew of Plaintiff's disability because he asked for a letter certifying it and at one point Plaintiff was required to undergo an in-patient psychiatric hospitalization to keep his job working for Dr. Pearse.

56. Plaintiff is a qualified individual because he can perform the essential functions of a Research Associate III at UM and a Research Health Science Officer at the VA, with or without a reasonable accommodation.

57. Plaintiff worked at UM for 8 years as a Research Associate III and had always met the expectations of a Research Associate III at his performance evaluation and never once had an unexcused absence from work.

58. Plaintiff was also a former principal investigator of a NIH F30 grant, has several research publications in which 3 of them he was the first author, was able to successfully conduct his own research projects at UM, and effectively supervised students who worked underneath him in the Pearse lab, many of whom because of the productive relationship they had with Plaintiff were accepted into medical school at UM and other Association of American Medical College medical schools.

59. These are qualities that demonstrate Plaintiff could also perform the essential functions of a Research Health Science Officer at the VA.

60. Plaintiff asked for several reasonable accommodations from UM which were not granted:

   a. He asked to only work between the hours of 9am to 5:30pm Mon-Fri and not have to work late nights and weekends to be there for his wife who was in a lot of pain and 8 months pregnant and to also help care for their 15 month old daughter.

   b. He told them this was needed for the good of his own mental wellbeing.

   c. After Dr. Pearse created unreasonable work deadlines and harassed and belittled Plaintiff, Plaintiff asked for the ability to transfer to another supervisor.

   d. Plaintiff notified UM that Dr. Pearse's adverse behavior was destabilizing his underlying medical condition, which caused the need for transfer.

e. Transfer to a different supervisor is a reasonable accommodation that was granted for other people, who were not disabled, but had difficulty with Dr. Pearse as their supervisor including: Dr. Clara Penas, Dr. Alejo Morales, Ms. Ren Chase, and Ms. Gabriella De La Cruz.

f. Additionally, Dr. Joan Wang, who also had problems with Dr. Pearse, and after being terminated from her job in the Pearse Lab, was allowed to start a medical residency position at the Jackson Memorial Hospital.

g. Furthermore, Plaintiff asked as a reasonable accommodation also for a letter certifying his disability to apply for a NIH K22 grant.

h. The benefit/privilege of providing needed letters of support for grant applications was a benefit and privilege of his employment enjoyed by similarly situated employees without disabilities.

i. Plaintiff also asked UM to provide him a mentor for the NIH grant application.

j. Being provided mentorship for grant applications was also a benefit and privilege of his employment enjoyed by similarly situated employees without disabilities.

61. Plaintiff asked the Miami VA for the reasonable accommodation also to provide him a mentor to apply for the VA-CDA-2 grant.

62. This reasonable accommodation request is similar to a student applicant who is a applying to a school, but no one there wants to teach him/her.

63. A reasonable accommodation would be requiring someone to teach/mentor an otherwise qualified applicant that is being retaliated against.

64. As much as a student/applicant can benefit from being taught, so does a teacher/mentor benefit by learning to not take part in retaliation against someone in violation of the ADA and Rehab Act.

65. This violation of the Rehab Act has resulted in a significant delay in Plaintiff's career as a physician scientist and medical educator, loss of the enjoyment of advancing medical science in his career, loss of wages, loss of dignity and reputation, emotional distress,

financial losses due to Court costs, interview costs, and loss of time spent representing himself instead of being engaged in paid activities.

### COUNT IV – ADA– Failure to Accommodate
### <u>Datto v. UM</u>

66. UM was Plaintiff's employer with more than 500 employees, and thus is covered by Title I of the ADA.

67. Plaintiff incorporates herein by this reference averments 53-60 as if they are fully set forth herein at length.

68. This violation of the ADA has resulted in a significant delay in Plaintiff's career as a physician scientist and medical educator, loss of the enjoyment of advancing medical science in his career, loss of wages, loss of dignity and reputation, emotional distress, financial losses due to Court costs, interview costs, and loss of time spent representing himself instead of being engaged in paid activities.

### RIGHT TO SUE LETTERS

69. Plaintiff attaches hereto his right to sue letters against UM and the VA as Exhibit "A".

70. Plaintiff attaches hereto as Exhibit "B" his dismissal letter of his complaint against the VA, which Plaintiff then appealed to the EEOC.

71. Although the EEOC, allege that Plaintiff's Complaint never alleges he was seeking employment, the dismissal letter clearly states "On the formal complaint of discrimination, the Complainant stated he was denied a mentor to assist him with his application for the VA's Career Development Award-2 program, which is designed to attract, develop, and retain talented VA researchers in areas of importance to VA. Successful applicants become VA employees."

72. Plaintiff was applying to the VA-CDA-2 grant because he was seeking to be employed by the VA as Research Health Scientist Officer.

## PRAYER FOR RELIEF

73. **WHEREFORE**, Plaintiff, Jeffrey Peter Datto, Ph.D., requests judgment in his favor and against the VA, UM, and Dr. Pearse for damages for the maximal amount allowed by the Rehab Act and the ADA, back pay, front pay, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, loss of enjoyment of advancing medical science as a physician scientist and medical educator, loss of time spent representing himself instead of being engaged in paid activities, loss of time spent applying for the grant applications, travel and hotel costs for the Gainesville interview, Court costs, and any other intangible injuries, punitive damages, reasonable attorney fees, litigation expenses and costs, injunctive relief reinstating Plaintiff to his position at UM or an equivalent position and also injunctive relief requiring the VA to appoint him to a Research Health Science Officer position or an equivalent open position, and Plaintiff also requests any other relief, including additional injunctive relief, that this Court deems appropriate.

Respectfully Submitted,.

Date: 9/15/20

Jeffrey P. Datto, Ph.D.
Pro Se Plaintiff
3352 w 98th pl
Hialeah, FL 33018
(786) 593-1271
JPDatto@gmail.com